**Edwin C. DOULIN, et al., Plaintiffs,**

**v.**

**Frank WHITE, Governor of the State of Arkansas, et al., Defendants.**

**No. LR–C–81–418.**

United States District Court,
E.D. Arkansas, W.D.

Sept. 24, 1982.

As Corrected Oct. 19, 1982.

See also, D.C., 528 F.Supp. 1323, D.C., 535 F.Supp. 450.

Robert Walker, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, John L. Ryder, Laughlin, Halle, Clark & Gibson, Memphis Tenn., Stan Miller, Miller, Jones & Goldman, Hot Springs, Ark., for plaintiffs.

R.B. Friedlander, Asst. Atty. Gen., Little Rock, Ark., for defendants.

Phillip H. Shirron, Sheridan, Ark., for plaintiff-intervenor.

Before ARNOLD, Circuit Judge, and OVERTON and WOODS, District Judges.

ARNOLD, Circuit Judge.

On January 5, 1982, we held the then existing division of the State of Arkansas into congressional districts, Act 965 of 1981, unconstitutional under Article I, § 2, of the Constitution of the United States. *Doulin v. White,* 528 F.Supp. 1323 (E.D. Ark. 1982) (three-judge court). We indicated that, unless the Governor of Arkansas should see fit to call the General Assembly into extraordinary session for the purpose of enacting a new and valid congressional apportionment, we would be compelled, after considering the views of the parties, to re-draw the district lines so that each member of Congress would represent a number of people as nearly equal as practicable. The State of Arkansas elected neither to appeal our decision invalidating the existing apportionment, nor to call a special session of the Legislature. Accordingly, we proceeded, after considering the submissions of the parties and hearing oral argument, to place

into effect a new arrangement of counties resulting in a substantially smaller deviation in population among the four congressional districts. *Doulin v. White,* 535 F.Supp. 450 (E.D. Ark. 1982) (three-judge court). Plaintiffs filed a motion for reconsideration, which was denied. Neither side sought review of our final decree in the Supreme Court of the United States.

The order denying plaintiffs' petition for reconsideration was entered on March 8, 1982. On July 22, 1982, plaintiffs and intervenor filed an application for attorneys' fees and expenses under 42 U.S.C. § 1988. The actual time spent by counsel for plaintiffs and intervenor, at the hourly rates claimed by them to be reasonable, together with the expenses actually incurred, comes to something over $90,000. The total amount requested in the motion, however, was $186,269. Plaintiffs ask that their lawyers' compensation be "enhanced" by a "multiplier" of 200%, on account of the quality and importance of the work performed, and the public interest in the result obtained. The State of Arkansas [1] filed an opposition to the motion on August 23, 1982, and the matter is now ready for decision.

### I.

The State first suggests that it would be appropriate to deny an award of fees altogether. Two arguments are advanced in support of this proposition: that plaintiffs are not "prevailing parties" within the meaning of 42 U.S.C. § 1988 because Act 965, the law against which their original complaint sought relief, never went into effect; and that the passage of time between this Court's final order and the filing of the petition for attorneys' fees amounts to such an unreasonable delay as to constitute laches. We disagree with both these asserted grounds.

The suggestion that a party whose suit prevents an unconstitutional law from taking effect is not a prevailing party for present purposes is frivolous. The Constitution is vindicated every bit as much by preventing an invalid law from going into effect, as by preventing such a law from continuing in effect. In fact, constitutional rights are probably better served by nipping in the bud any attempt to violate them, than by letting an invalid law become effective and then suing to set it aside. The Supreme Court has repeatedly held that a person who can reasonably expect to be injured by a law not yet in effect has standing to bring suit to enjoin the implementation of that law on the ground that it would conflict with the Constitution. See, *e.g., Blum v. Yaretsky,* —— U.S. ——, ——, 102 S.Ct. 2777, 2783–84, 73 L.Ed.2d 534 (1982). That is exactly what happened here.

As to the passage of time between this Court's order and the filing of the request for allowance of fees, there was a time, certainly, when it was arguable that a request for attorneys' fees should be made in the form of a motion to alter or amend the judgment under Fed.R.Civ.P. 59. Such motions must be filed within ten days of the entry of a final judgment. The Court of Appeals for this Circuit squarely rejected that position, however, in *Obin v. Local Union No. 9,* 651 F.2d 574 (8th Cir. 1981). That case held that an application for allowance of attorneys' fees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* like an application for the taxation of costs, is not subject to any fixed time limit, but is rather to be treated as a matter entirely separate from the merits of the case. To the same effect, in substance, is the later decision of the Supreme Court in *White v. New Hampshire Department of*

---

1. The State of Arkansas as such was not a named defendant. The defendants, rather, are the Governor and certain other public officials of the State. We refer to the defendants as "the State" for purposes of convenience. We note, in addition, that the Eleventh Amendment is no bar to the award of attorneys' fees and expenses against a state under 42 U.S.C. § 1988. See *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The award of attorneys' fees made in this opinion is against the defendants in their official capacity, not as individuals.

*Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), which arose under 42 U.S.C. § 1988. In both *Obin* and *White* it was suggested that district courts, by way of local rule, would be well advised to impose time limits on applications for fees. This Court, together with the United States District Court for the Western District of Arkansas, has now adopted a rule that fee applications must be filed within fourteen days of the entry of final judgment, but the rule did not become effective until September 1, 1982. E.D. Ark.R. 28. It therefore has no effect on this case. It is still possible, no doubt, for a fee petition to be so long delayed as to prejudice the opposing party unreasonably. In other words, if the delay is unreasonable, and if the opposing party is thereby unfairly prejudiced, it may be appropriate to deny an award of fees altogether. Such is not the case here. The State of Arkansas has suggested no specific prejudice by reason of the short delay of some four months in this case, and we can think of none. In addition, the State can hardly be surprised by the filing of the fee petition here, because that filing was preceded by an attempt on the part of counsel for plaintiffs to negotiate some kind of settlement with the State with respect to the amount of fees and expenses to be paid.

We conclude that there are no special circumstances that would justify denying an award of fees altogether in the present case. Plaintiffs brought the suit that resulted in the invalidation of Act 965 of 1981. A new apportionment scheme was placed in effect by order of this Court. Had the suit not been filed, this event would never have occurred. Plaintiffs and intervenor are therefore prevailing parties, and the only question that remains for us to decide is the proper amount of fees and expenses to be awarded.

## II.

In order to place the issue in context, we start with the words of the Court of Appeals in a recent unanimous opinion:

> It is worth recalling that Congress, not the courts, has made the decision to impose lawyers' fees on the losing side in civil-rights and other limited types of cases. The so-called American rule, which was judge-made law, left the burden of litigation unshifted: each side paid its own lawyers. Section 1988, enacted in 1976, is a statutory exception to the American rule. The people's elected representatives in Congress evidently felt that those who violate constitutional rights should pay for the legal services required to redress the violation. Our task as judges is to carry out this legislative command.

*Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 139 n. 4 (8th Cir. 1982) (en banc). The Court continued:

> The computation of allowable attorneys' fees under 42 U.S.C. § 1988 is governed by familiar principles. Typically, a court will first multiply the number of hours reasonably expended times the lawyer's regular hourly rate. The product of these two numbers becomes a basic or "lodestar" figure that is normally a floor below which fee awards do not go. The court will then consider other relevant factors .... If these factors lead the court to change the basic or lodestar figure, usually (but not always) the change will be an increase. A court also has discretion to enhance a fee because of the public importance or other extraordinary feature of a case.

*Id.* at 139–140 (citations and footnote omitted).

Plaintiffs' request may be summarized as follows:

For Robert Walker, of the firm of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch of Memphis, Tennessee, 261.8 hours at $85 an hour, plus 21.6 clerk and associate hours at $25 an hour, for a total fee request of

| | |
|---|---|
| | $22,793.00 |
| plus out-of-pocket expenses | 2,490.62 |
| Basic request for Mr. Walker | $25,283.62 |

Mr. Walker was admitted to the bar in 1968.

For John L. Ryder, of the firm of Laughlin, Halle, Clark & Gibson of Memphis, Tennessee, 253.4 hours at $85 an hour

| | |
|---|---|
| | $21,539.00 |
| plus 4.7 hours of legal assistants at $25 an hour | 117.00 |
| total basic fee request | $21,656.50 |
| plus out-of-pocket expenses | 1,408.72 |
| Basic request for Mr. Ryder | $23,065.22 |

Mr. Ryder was admitted to the bar in 1974.

For Stan Miller, of the firm of Miller & Goldman, Hot Springs, Arkansas, 294.1 hours at $65 an hour $19,116.50

plus 140.1 law-clerk hours at $25 an hour 3,502.50

plus 57.1 paralegal hours at $20 an hour 1,142.00

plus 22.3 staff-assistant hours at $10 an hour 223.00

Basic fee request for Mr. Miller $23,948.00

plus out-of-pocket expenses 6,184.46

Basic request for Mr. Miller $30,168.46

Mr. Miller was admitted to the bar in 1975.

For David Goldman, of the firm of Miller & Goldman, 297.1 hours at $55 an hour $16,340.50

Mr. Goldman was admitted to the bar in 1981.

And for Phillip H. Shirron of Sheridan, Arkansas, counsel for intervenor Veo Easley, County Judge of Grant County, Arkansas, 71.2 hours at $50 an hour $ 3,560.00

plus out-of-pocket expenses 62.20

Total basic request for Mr. Shirron $ 3,622.20

Mr. Shirron was admitted to the bar in 1976.

The total fee requested for plaintiffs' attorneys thus comes to $82,799.00. Plaintiffs ask that this fee be "enhanced" by a multiplier of 200%, resulting in an adjusted fee of $165,598.00. The total charge for law clerks and paralegals is $5,525.00, with no multiplier sought for this work. The sum of these two figures is $171,123.00. This enhanced figure would then be further augmented by the amount of $10,146.00 in expenses, plus a lump-sum award of $5,000.00 for the time spent in preparing the application for an award of fees. The total sum requested is $186,269.00.

A.

We have no doubt—and the state does not dispute—that the time and expenses detailed in the various affidavits filed by plaintiffs' counsel were in fact expended in the course of the lawsuit. Defendants suggest, however, that various factors should result in a decrease of the amount allowed, and we agree in part. The normal practice is to allow fees for all time reasonably expended on a matter by prevailing counsel.

*E.g., Brown v. Bathke,* 588 F.2d 634 (8th Cir. 1979). In the instant case, however, the litigation falls into two quite distinct phases, in both chronological and analytical terms. The principal objective of the complaint as originally filed was to obtain a declaration that Act 965 of 1981 is invalid. Plaintiffs and intervenor unquestionably prevailed on this phase of the case, and this Court so held on January 5, 1982. Thereafter, the focus of the litigation shifted sharply. The question then became, assuming no special session of the Arkansas General Assembly, what plan the Court should order into effect as a substitute for the invalidated law. Plaintiffs came forward with no fewer than six suggestions, all of which would have had the effect of shifting Garland County from the Fourth Congressional District into the Third. It became clear, no later than the time of oral argument at the conclusion of the trial on the merits, that the principal objective of plaintiffs, in practical terms, was to overturn the Legislature's decision to take Garland County out of the Third District and put it into the Fourth. (Intervenor Veo Easley, County Judge of Grant County, on the other hand, had a different motivation: He wanted Grant County left in the Fourth District, instead of being taken out, as would have been the case if Act 965 had been upheld.) Each of the plans suggested by plaintiffs at this second, relief stage of the litigation was opposed by the State of Arkansas and ultimately rejected by this Court. The Court selected instead a plan referred to as the "original Miller Bill," which placed both Garland and Grant Counties in the Fourth District. Thus, the intervenor prevailed both on the merits and at the relief stage of the case, but the original plaintiffs prevailed only in the former portion of the litigation.

■ It is often impossible, or at least impractical, for a court to separate time spent by lawyers on so-called prevailing issues from time spent on non-prevailing issues because of the interrelated nature of prevailing and non-prevailing claims. Such was the case in *Brown v. Bathke, supra,* in

which the plaintiff relied on two theories to support her claim and prevailed only on one.[2] Here, however, no such practical difficulty exists. All of the time spent before January 5, 1982, can justifiably be labeled as "prevailing" time. None of the time spent after January 5, 1982, can be so categorized, because after that date the original plaintiffs prevailed on none of the issues before the Court. One of the factors relevant to the determination of a reasonable fee, of course, is the results obtained, and in the instant case plaintiffs only partially succeeded. It is our duty to do justice to the losing as well as to the winning side, and we think it would be unjust to require the State to pay for all of the time expended by plaintiffs on the relief stage of this case. A rule that would inflexibly require compensation for all of the hours expended, even on distinct non-prevailing phases of the litigation, could produce absurd and unjust results. In the present case, for example, plaintiffs are asking to be compensated for time spent on their petition for reconsideration, filed after this Court's second opinion, which petition was speedily denied. To allow a fee for that kind of service would be plainly unjust, and the same is true, for the reasons we have given, of time spent unsuccessfully seeking the plaintiffs' preferred plan of redistricting.

Special circumstances present here reenforce this conclusion. There could be cases, we suppose, where it would be proper to compensate a prevailing party for all of his time, even with respect to a chronologically distinct phase of the case on which he failed to prevail. For example, redistricting plans suggested by plaintiff, even though not themselves adopted by the Court, could in some cases be of material help in the Court's task of drawing proper district lines.[3]

Here, however, our first opinion, holding Act 965 of 1981 unconstitutional, clearly foreshadowed the relief ultimately decreed. At the close of that opinion we said:

It seems to us that February 15 is a reasonable date by which the Legislature may be expected to have acted, if it chooses to act at all. Failing the adoption of a new congressional-districting law by that time, it will be our duty to consider further relief . . . If we must order a plan into effect, it is our present intention to choose either the Ray Plan or the original Miller Bill, subject, of course, to whatever suggestions or arguments the parties may make to us in a timely fashion. In making this choice, if it comes to that, we will have in mind, among any other factors that may be relevant, that the original Miller Bill has a smaller population variance than the Ray Plan, got more votes in the Arkansas Senate, and seems closer to the design of Act 965.

528 F.Supp. at 1333. At this point the handwriting was on the wall, and it should have been apparent to all parties that the Court, if left to its own devices, would probably adopt the original Miller Bill. On

---

**2.** It is, perhaps, noteworthy that the plaintiffs' second theory, sex discrimination, was persuasive to one member of the Court in her first appeal. See *Brown v. Bathke,* 566 F.2d 588, 593 (8th Cir. 1977) (Miller, J., concurring).

**3.** This seems to have been the case in *LaComb v. Growe,* No. 4–81 Civ. 152 (D.Minn. August 16, 1982) (three-judge court), where fees were allowed for both the liability and the relief stages of a reapportionment case, even though the court did not adopt the plaintiffs' plan. Language in the *LaComb* opinion indicates that a fee should be awarded for all time reasonably expended on all issues, even though plaintiffs fail to prevail on discrete phases of the case. We see several differences between *LaComb* and the present case. There, the liability phase of the case was of little consequence. It was almost a foregone conclusion that the existing Minnesota apportionment would be held unconstitutional. The Minnesota Legislature had wholly failed in its duty to reapportion both itself and the congressional districts after the 1980 census. In addition, the reapportionment plans suggested by plaintiffs seem to have been of some help to the court in fashioning its own plans. Finally, the plaintiffs' lawyers in *LaComb* requested and were awarded a much smaller sum, involving much less time, on both phases of that case, than the plaintiffs here request, even after the relief phase of this case is disallowed. The ultimate question is always the court's judgment of what fee would be reasonable for the particular case before it.

February 25, 1982, we did exactly that, after considering the Ray Plan, the original Miller Bill, and six other plans proposed by plaintiffs, one of which we had already referred to unfavorably in our first opinion. It is also of some relevance that at the liability stage of the case counsel for plaintiffs in effect conceded that the original Miller Bill, if it had been adopted by the General Assembly in 1981, would have been in compliance with Article I, § 2.

█ For these reasons, we think it fair to disallow all fees and expenses by counsel for plaintiffs after January 5, 1982. No such disallowance is appropriate with respect to counsel for intervenor, because, as noted above, he prevailed on both stages of the case. When plaintiffs' fee request is thus modified, the following time and expenses remain:

Mr. Walker's firm's 283.4 hours, when reduced by the 86.95 hours spent after January 5, 1982, would leave 196.45 hours. Mr. Walker's daily entries of time spent do not distinguish between his own time and those of clerks and associates, but we do know that of the original total of 283.4 hours, 261.8 were partner hours, and 21.6 were clerk and associate hours. If we assume that the same proportion of partner time was spent after Jan. 5, 1982, as before, both the partner and the clerk-associate hours should be reduced by 86.95/283.4, or about .31%. A reduction of this magnitude would produce a pre-Jan. 5, 1982, estimate of 180.6 partner hours and 15.85 clerk-associate hours. At the requested rates, which we think are reasonable, the following fees would result:

| | |
|---|---|
| 180.5 hours at $85 = | $15,351.00 |
| 15.85 hours at $25 = | 396.25 |
| | $15,747.25 |
| plus out-of-pocket expenses up through Jan. 5, 1982 | 1,431.23 |
| Total | $17,178.48 |

Mr. Ryder's firm's hours are broken down by dates and time spent by partners and legal assistants. The 253.4 partner hours, when limited to time up to and including January 5, 1982, would be reduced to 150.3 hours, and the 4.7 legal assistants' hours would be reduced to 1.8. The following fees would result:

| | |
|---|---|
| 150.3 hours at $85 = | $12,775.50 |
| 1.8 hours at $25 = | 45.00 |
| | $12,820.50 |
| plus out-of-pocket expenses up through Jan. 5, 1982 | 851.69 |
| Total | $13,672.19 |

Mr. Miller's 294.1 hours of personal time would be reduced, if time spent on or after January 6, 1982, is subtracted, to 210 hours. This amounts to a 28% reduction. We apply this reduction to 140.1 law-clerk and 57.1 paralegal hours claimed, and the result is 100.9 law-clerk and 41.1 paralegal hours. We disallow entirely the 22.3 "staff assistant" hours. The "staff assistant" appears to be a courier, and this expense should be treated as part of the general overhead of the firm of Miller & Goldman. The 28% reduction factor will likewise be applied to the out-of-pocket expenses claimed by this firm, because they are not itemized by date in Mr. Miller's submission. The following award would result:

| | |
|---|---|
| 210 hours of lawyer's time at $65 an hour | $13,650.00 |
| 140.1 hours of law clerks' time at $25 an hour | 3,502.50 |
| 57.1 hours of paralegal time at $20 an hour | 1,142.00 |
| Total fees | $18,294.50 |
| plus out-of-pocket expenses (72% of $6,184.46) | 4,452.81 |
| | $22,747.31 |

Of Mr. Goldman's total of 297.1 hours, 34.7 were spent after January 5, 1982. The remainder is 262.4 hours. A fee of $55 an hour is requested, but we think this figure is too high for a lawyer who was admitted to practice only last year. We allow instead $40 an hour. The resulting award would be:

| | |
|---|---|
| 262.4 hours at $40 an hour = | $10,496.00 |

When the requested fees and expenses are reduced in this manner, a total fee of $57,358.25, plus expenses of $6,735.73, for a grand total of $64,093.98 would result. Mr. Shirron's fees would be unaffected by this portion of our analysis, because his client prevailed with respect to relief as well as on the merits.

### B.

█ This figure represents all time actually expended on the liability phase of this case, multiplied by hourly rates that we have found to be reasonable, plus all expenses actually incurred up through January 5, 1982, when the liability phase of the case came to an end. Plaintiffs ask that we double the award on account of the quality of the work performed and the importance of the case, but we decline to do so. We do not for a moment deprecate the skill, learning, and ability which the lawyers for plaintiffs exhibited in this matter, and we are mindful that Messrs. Walker and Ryder, in particular, have extensive specialized experience in redistricting cases. On the whole,

however, we do not believe that the case was sufficiently difficult, or the results obtained sufficiently significant, to justify any enhancement of the fee. See *LaComb v. Growe*, No. 4–81 Civ. 152 (D.Minn. Aug. 16, 1982) (three-judge court), a legislative and congressional-district reapportionment case in which an upward adjustment of the "lodestar" amount was requested and denied.

 The State, on the other hand, claims that the total time expended by counsel for plaintiffs, over 1,100 hours on the case as a whole, and 803.2 hours of lawyers' time up to January 5, 1982, is so excessive as to be unreasonable. The State also claims that certain portions of the time are duplication of effort by more than one lawyer on plaintiffs' side. We agree. For example, some of the depositions were attended by more than one lawyer on plaintiffs' side, and three or four of plaintiffs' counsel were present in the courtroom during hearings, in addition to counsel for the intervenor. Certainly in a case of this magnitude it is reasonable for two lawyers to be present on a side in the courtroom, but we are reluctant to impose upon defendants any costs beyond that. We note that the State was ably defended by one assistant attorney general, and that her total hours of time on the case were much fewer than those of plaintiffs' lawyers. We think plaintiffs' lawyers spent a good deal more time on the case than was reasonably necessary. We cannot justify in our own minds more than 400 hours of time for plaintiffs' counsel up through January 5, 1982.

After considering all of the relevant factors, we believe that a fee award of $30,000.00, plus out-of-pocket expenses described above, is appropriate. This amount, we think, is large enough to satisfy the congressional purpose of attracting competent counsel to civil-rights cases, but not so large as to constitute a windfall. In this connection, we call attention to the fee of $39,982.50 for 444 hours' work, plus costs of $9,009.71, allowed by the three-judge court in *LaComb v. Growe, supra.* The *LaComb* case, in some ways, was more complex than

the instant litigation, because it involved both the reapportionment of the Minnesota Legislature, and the division of the state into eight congressional districts.

### C.

 It remains to deal with plaintiffs' request that their lawyers be allowed $5,000.00 for time expended in connection with the application for an award of fees and expenses. It is true that time spent for this purpose is compensable under the statute, but plaintiffs have not given us anything approaching a detailed itemization of the time spent and the services performed. The $5,000.00 requested is simply put forward as a reasonable lump sum for the purpose. This kind of request does not meet plaintiffs' burden of justification, and we reject the invitation to add another $5,000.00 on the fees allowed.

### III.

In sum, we allow the following fees and expenses:

For Mr. Shirron, counsel for intervenor, $3,560.00 in fees and $62.20 in expenses, for a total of $3,612.20.

For plaintiffs' counsel, $30,000.00 in fees and $6,735.73 in expenses, for a total of $36,735.73. We leave to plaintiffs the decision of how this sum should be allocated among the three firms and four lawyers representing them.

Thus, as against a request of $186,269.00, we allow a total award for fees and expenses of $40,347.93. Judgment will be entered accordingly, and will bear interest at the rate of ten per centum per annum until paid.

IT IS SO ORDERED this 24th day of September, 1982.

### JUDGMENT

In accordance with the opinion of this Court filed today, it is CONSIDERED, ORDERED, ADJUDGED, and DECREED that plaintiffs have and recover of and from the defendants in their official capacities judgment in the amount of Thirty-six Thousand

Seven Hundred Thirty-five and 73/100 Dollars ($36,735.73), representing an allowance of attorneys' fees and expenses as set forth in said opinion; and

It is further CONSIDERED, ORDERED, ADJUDGED, and DECREED that intervenor have and recover judgment of and from the defendants, in their official capacities, judgment in the amount of Three Thousand Six Hundred Twelve and 20/100 Dollars ($3,612.20), for attorneys' fees and expenses as set out in said opinion.

This judgment shall bear interest at the rate of ten per centum per annum until paid.

For which let execution issue, at the time and in the manner provided by law.