# KARCHER, SPEAKER, NEW JERSEY ASSEMBLY, ET AL. *v.* DAGGETT ET AL.

No. A-783 (81-2057).   Decided March 15, 1982

JUSTICE BRENNAN, Circuit Justice.

Applicants, the Speaker of the New Jersey Assembly, the President of the New Jersey Senate, and eight Members of the United States House of Representatives from New Jersey, have applied to me for a stay pending this Court's review on appeal of the judgment of a three-judge District Court for the District of New Jersey entered March 3, 1982.   *Daggett* v. *Kimmelman,* 535 F. Supp. 978.   The judgment declared unconstitutional 1982 N. J. Laws, ch. 1, which creates districts for the election of the United States Representatives from New Jersey, and enjoined the defendant state officers from conducting primary or general congressional elections under the terms of that statute.

On the basis of the 1980 decennial census, the number of United States Representatives to which New Jersey is entitled has been decreased from 15 to 14.   Consequently the

New Jersey Legislature was required to apportion 14 congressional districts. Chapter 1 is the product of the state legislature's effort to meet that requirement. The District Court found that in drafting ch. 1 the legislature was concerned not only with drawing districts of equal population as an "aspirational" goal but also with recognizing such factors as the preservation of the cores of pre-existing districts, the preservation of municipal boundary lines, and the preservation of the districts of incumbent Democratic Congressmen. Chapter 1 creates 14 congressional districts with an overall absolute range of deviation of 3,674 people and an overall relative range of deviation of 0.6984% from the "ideal" map of 14 districts of 526,059 persons each. There were, however, several other proposals brought before the legislature that yielded total deviations of less than 0.6984%. The opinion for the majority of the District Court says of these:

> "For example, the Roeck plan contained a total deviation of .3250%, and only .2960% after it was amended. The DiFrancesco plan . . . had a total deviation of .1253%. The Hardwick plan . . . contained a total deviation of .4515%. The Bennett plan . . . and the Kavanaugh plan . . . contain total deviations of .1369% and .0293%, respectively." 535 F. Supp., at 982.

All three judges of the District Court agreed that the constitutionality of 1982 N. J. Laws, ch. 1, was to be determined under the standard announced in *Kirkpatrick* v. *Preisler*, 394 U. S. 526 (1969), and its progeny, *e. g.*, *White* v. *Weiser*, 412 U. S. 783 (1973). But the judges divided 2 to 1 on what that standard is. The majority read *Kirkpatrick* as holding that, even if 0.6984% was to be regarded as a *de minimis* variance,

> "P. L. 1982, c. 1 can withstand constitutional attack only if the population variances 'are unavoidable despite a good-faith effort to achieve absolute equality . . . .' *Kirkpatrick*, 394 U. S. at 531 . . . . It is clear that the .6984% population deviation of P. L. 1982, c. 1 is not un-

avoidable. The legislature had the option of choosing from several other plans with a lower total deviation than .6984%." 535 F. Supp., at 982.

The dissenting judge, on the other hand, read *Kirkpatrick* to suggest:

> "[V]ariances may be justified which do not achieve statistically significant dilutions of the relative representation of voters in larger districts when compared with that of voters in smaller districts. . . . [*Kirkpatrick* is to be read to announce] a prohibition against toleration of *de minimis* dilutions of relative representation rather than as a prohibition against toleration of *de minimis* population variances which have no statistically relevant effect on relative representation. A plus-minus deviation of 0.6984% falls within the latter category." 535 F. Supp., at 982.

The appeal would thus appear to present the important question whether *Kirkpatrick* v. *Preisler* requires adoption of the plan that achieves the most precise mathematical exactitude, or whether *Kirkpatrick* left some latitude for the New Jersey Legislature to recognize the considerations taken into account by it as a basis for choosing among several plans, each with arguably "statistically insignificant" variances from the constitutional ideal of absolute precision.

The principles that control my determination as Circuit Justice of this in-chambers application were stated in *Rostker* v. *Goldberg*, 448 U. S. 1306 (1980) (BRENNAN, J., in chambers):

> "Relief from a single Justice is appropriate only in those extraordinary cases where the applicant is able to rebut the presumption that the decisions below—both on the merits and on the proper interim disposition of the case—are correct. In a case like the present one, this can be accomplished only if a four-part showing is made. First, it must be established that there is a 'reasonable

probability' that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction. Second, the applicant must persuade [the Circuit Justice] that there is a fair prospect that a majority of the Court will conclude that the decision below was erroneous. While related to the first inquiry, this question may involve somewhat different considerations, especially in cases presented on direct appeal. Third, there must be a demonstration that irreparable harm is likely to result from the denial of a stay. And fourth, in a close case it may be appropriate to 'balance the equities'—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Id.*, at 1308 (citations omitted).

The importance of a definitive answer from this Court as to the proper interpretation of the *Kirkpatrick* standard is self-evident: Doubtless all 50 States would be assisted by that answer in any review of the apportionment of congressional seats in consequence of the 1980 census. My task is not to adjudicate this application on my own view of the merits of that question, but rather to determine whether there is a "reasonable probability" that four Justices will consider the issue sufficiently meritorious to note probable jurisdiction of this appeal, and, if so, whether there is a fair prospect that a majority of the Court will conclude that the decision below was erroneous. Neither event can be predicted with anything approaching certainty, but nonetheless it does seem to me that there is a reasonable probability that jurisdiction of the appeal will be noted, and that there is a fair prospect of reversal.

As to the third *Rostker* requirement, I conclude that applicants would plainly suffer irreparable harm were the stay not granted. Under the District Court order the legislature must either adopt an alternative redistricting plan before March 22 next or face the prospect that the District Court will implement its own redistricting plan. With respect to

the balance of the equities, this Court has repeatedly emphasized that legislative apportionment plans created by the legislature are to be preferred to judicially constructed plans.

Accordingly, I am today entering an order granting the application for a stay pending the filing of a jurisdictional statement and, if probable jurisdiction is noted, final disposition of the appeal.