716 F.2d 68
 LATINO POLITICAL ACTION COMMITTEE, INC., et al., Plaintiffs, Appellees,
v.
CITY OF BOSTON, et al., Defendants, Appellees.
Christopher A. Ianella, et al., Defendants, Appellants.
LATINO POLITICAL ACTION COMMITTEE, INC., et al., Plaintiffs, Appellees,
v.
CITY OF BOSTON, et al., Defendants, Appellees.
Attorney General of the Commonwealth of Massachusetts,
Intervenor, Appellant.
LATINO POLITICAL ACTION COMMITTEE, INC., et al., Plaintiffs, Appellees,
v.
CITY OF BOSTON, et al., Defendants, Appellants.
LATINO POLITICAL ACTION COMMITTEE, INC., et al., Plaintiffs, Appellees,
v.
CITY OF BOSTON, et al., Defendants, Appellees.
Albert O'Neil, Defendant, Appellant.
 Nos. 83-1578--83-1581.
 United States Court of Appeals,
First Circuit.
 Argued Aug. 3, 1983.
Decided Aug. 5, 1983.
 
 Alexander G. Gray, Jr., Asst. Atty. Gen., Chief, Elections Div., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Atty. Gen. of the Com. of Mass.
 Stephen H. Oleskey, with whom Jane D. Kaplan, Paul Saba, and Hale & Dorr, Boston, Mass., were on brief, for Christopher A. Ianella, et al.
 Joseph L. Kociubes, with whom Jonathan W. Fitch, Bingham, Dana & Gould, Alan Jay Rom, and Frank R. Parker, Boston, Mass., were on brief, for Latino Political Action Committee, Inc., et al.
 Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.
 PER CURIAM.
 
 
 1
 These cases are before us on motions for a stay pending appeal of the district court's order invalidating a plan for Boston City Council districts, 568 F.Supp. 1012. If the stay were granted the election would presumably take place as scheduled with the seats allocated in a manner that the district court found to be constitutionally impermissible. If the stay were denied the election would take place presumably at some later date. The representations as to the length of delay have been widely divergent.
 
 
 2
 After reviewing the extensive and able memoranda in this case and after oral argument and deliberation we have concluded that no stay should be granted.
 
 
 3
 Our decision on a motion for a stay pending appeal is necessarily something short of a final decision on the merits. Such matters often, as here, arise in contexts of great urgency with only a brief period available for review and analysis.
 
 
 4
 Nonetheless, one of the factors which we must weigh in deciding such a motion is the possibility that appellant will succeed on the merits. In this case we have concluded that the likelihood of such success is too low to justify granting of the stay.
 
 
 5
 While the parties have raised several issues in several ways we briefly summarize our views on only those issues we regard as particularly noteworthy.
 
 
 6
 1. The Use of 1975 State Decennial Census Data
 
 
 7
 The City's obligation was to make an "honest and good faith effort" to create equitably apportioned districts. Reynolds v. Sims, 377 U.S. 533, 577, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506 (1963). In carrying out its duties, the City chose to use population figures that would be eight years old by the time of the election despite the fact that it was forwarned that that data would significantly overstate the total population of the City and significantly understate the minority proportions. This decision was made even though 1980 Federal Census data was available and even though that data showed the proposed district plan would lead to a variance of roughly 20%.
 
 
 8
 The City defends its use of the undisputedly inaccurate figures on several grounds. Only one is worthy of note. The City contends that it was excused from using the more recent figures for this election[1] because it had challenged them in court and doubted their reliability. Since the 1975 data presents only an 8% deviation, it argues that the plan should stand.
 
 
 9
 The argument has several defects. First, to the extent that anyone described to the district court the City's position in its lawsuit challenging the 1980 federal census the description was to the effect that the 1980 data undercounts minorities. If so, that problem was significantly exacerbated in the 1975 data actually used by the City, making the 1975 data more, rather than less, suspect.
 
 
 10
 Second, other than this description, the district court was given no factual basis for doubting the validity of the 1980 figures.[2] Given the clearly dubious nature of the 1975 data, the court's comparative use of the 1980 data strikes us as appropriate.
 
 
 11
 That comparison reveals disparities that establish what is concededly a prima facie case. In the face of this the appellants presented to the district court no indication of governmental objectives which might serve to justify the deviation.
 
 
 12
 Given that the use of the 1975 figures appears to be unreasonable; that the accuracy of the 1980 figures was not drawn into question in any material way; and, that the 1980 figures established a prima facie case of impermissible deviation, we conclude, at this point, that the appellants have established an insufficient likelihood of success on this issue.
 
 2. Failure to Notify the Attorney General
 
 13
 The Attorney General as Intervenor-Appellant argues that the district court erred by failing to give him adequate notice of an attack on a state statute as required by 28 U.S.C. Sec. 2403(b).
 
 
 14
 This argument suffers from several weaknesses.
 
 
 15
 First, formal notice was given, albeit quite late in the proceedings.
 
 
 16
 Second, though the timing indicated that a decision would be imminent the Attorney General did not ask for a delay in decision.
 
 
 17
 Third, the Attorney General had available to him, and utilized, post-judgment procedure as a remedy to that lateness. In doing so he presented an argument that, if the matter were undone at that late date he would present justification for using the 1975 data. The nature and import of those justifications were, however, so vague that we doubt the denial of the post-judgment motion would be viewed as an abuse of discretion. Browder v. Commissioner, Department of Corrections, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978).
 
 
 18
 Fourth, in alleging that he received no formal notice he does not say (despite the fact that the issue has been raised) that he did not have actual notice, which might normally suffice. Finch v. Mississippi State Medical Association, 585 F.2d 765, 779 (5th Cir.1978). Especially in the context of a stay proceeding it seems unrealistic for us to assume that the Attorney General lacked actual notice of litigation of this character and importance taking place in the capitol city and affecting many of Boston's leading officials.
 
 
 19
 Fifth, the notice requirement does not apply when "state officers" are parties. It may even be, although we do not decide the issue, that the responsible Boston city officials were "state officers" for the purpose of the statute. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935).
 
 
 20
 We conclude that on this issue also there has been an insufficient showing of a likelihood of success on the merits.
 
 
 21
 3. Proximity of the Election as Distinguishing Factor
 
 
 22
 It is argued that the Supreme Court and other courts have favored stays to avoid disrupting elections. The cases cited in this area are, with one exception,[3] ten years old or older. They were written in a period when the concepts announced in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1963) were first developing or facing their first real test after the 1970 census.
 
 
 23
 Twenty years have passed since the one person-one vote concept was articulated. Whatever special deference may have existed in the past has considerably less justification now. Thus we see no reason to depart from traditional stay analysis.
 
 
 24
 In addition, all the Supreme Court cases cited involved statewide elections and presented more compelling aspects than are presented here for not holding up the electoral process. For instance, such elections involve significantly more voters, candidates and expense than does this election where a limited number of city council and school committee seats are involved.
 
 
 25
 Since we are unconvinced that any special standard should be applied at this time and in this localized election we apply the traditional analysis and deny the motions for a stay pending appeal.
 
 
 26
 Stay denied.
 
 
 
 [1]
 We find nothing in Chief Judge Caffrey's opinion to suggest that accurate State Census figures may not be used in later years to re-apportion the districts
 
 
 [2]
 The failure to present this and other matters to the district court casts doubt on the argument that there was a material issue of fact as to the validity of the 1980 figures and that, hence, summary judgment was inappropriate. Other than the minority undercount, which cuts against the appellants' position, the record contains only the vaguest general claims of mismanagement. No material fact seems likely to have been raised by these matters
 
 
 [3]
 The exception is Karcher v. Daggett, 455 U.S. 1303, 102 S.Ct. 1298, 71 L.Ed.2d 635 (1982), a single justice stay in a case where the deviation was 0.6984% and where traditional stay analysis was applied