**George T. DAGGETT, Plaintiff,**

v.

**Irwin I. KIMMELMAN, etc., et al., Defendants.**

**Edwin B. FORSYTHE, et al., Plaintiffs,**

v.

**Thomas H. KEAN, etc., et al., Defendants,**

**James J. Florio, et al., Defendants-Intervenors.**

**Civ. A. Nos. 82–297, 82–388.**

United States District Court, D. New Jersey.

Aug. 26, 1985.

Hellring, Lindeman, Goldstein, Siegal & Greenberg by Jonathan L. Goldstein, Stephen L. Dreyfuss, Newark, N.J., for plaintiffs in No. 82–388.

Irwin I. Kimmelman, Atty. Gen. of N.J. by William Harla, Deputy Atty. Gen., Trenton, N.J., for defendants Kean, Kimmelman and Burgio.

Greenstone & Sokol by Leon J. Sokol, Hackensack, N.J., for defendant-intervenor New Jersey Senate.

Marinari & Farkas, P.C. by Lawrence T. Marinari, Trenton, N.J., for defendant-intervenor New Jersey Assembly.

Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, P.A. by Joel C. Balsam, Newark, N.J., for defendants-intervenors Florio, et al.

## OPINION

CLARKSON S. FISHER, Chief Judge.

As a result of the 1980 decennial census, the New Jersey Legislature was required to reapportion the state's congressional districts from 15 to 14. Eventually, the legislature enacted what has been referred to as the "Feldman Plan," which was signed into law by the then Governor of New Jersey on January 19, 1982. Quickly, several individuals, including the incumbent Republican members of Congress, filed suit declaring that the Feldman Plan violated article I, section 2 of the United States Constitution. Named as defendants were Governor Kean, Attorney General Kimmelman, and Secretary of State Burgio (State Defendants). The New Jersey Legislature and the incumbent Democratic members of Congress (Legislature-Intervenors and Congressional-Intervenors, respectively) intervened to defend the constitutionality of the Feldman Plan.

After conducting a hearing on March 3, 1982, a three-judge district court, by a two-to-one vote, issued an opinion and order declaring the Feldman Plan unconstitutional. *Daggett v. Kimmelman*, 535 F.Supp. 978 (D.N.J.1982). The three-judge court enjoined the State Defendants from conducting elections under the Feldman Plan, but on application of the Legislature-Intervenors and Congressional-Intervenors, Justice Brennan, as Circuit Justice, stayed the district court's order pending appeal to the Supreme Court. *Karcher v. Daggett*, 455 U.S. 1303, 102 S.Ct. 1298, 71 L.Ed.2d 635 (1982). Plaintiffs' motions to vacate the stay and expedite the docketing of the appeal were denied, 456 U.S. 901, 102 S.Ct. 1745, 72 L.Ed.2d 157 (1982), and probable jurisdiction was noted at 457 U.S. 1131, 102 S.Ct. 2955, 73 L.Ed.2d 1347 (1982). The Supreme Court's affirmance of the district court's holding by a five-to-four vote, 462 U.S. 725, 103 S.Ct. 2653, 77 L.Ed.2d 133 (1983), restored the injunction.

When the New Jersey Legislature failed to enact a constitutional congressional redistricting plan by February 3, 1984, the three-judge district court held a hearing for further relief and unanimously adopted the plan submitted by plaintiffs because it achieved the lowest population deviation and most compact districts. *Daggett v. Kimmelman*, 580 F.Supp. 1259 (D.N.J. 1984). The intervenors presented Justice Brennan with an application for a stay; he referred the application to the entire Court and, on March 30, 1984, by a six-to-three vote, the application was denied. *Karcher v. Daggett*, —— U.S. ——, 104 S.Ct. 1691, 80 L.Ed.2d 165 (1984). A few days later the Court denied intervenors' motion to expe-

dite consideration of the statement as to jurisdiction, —— U.S. ——, 104 S.Ct. 1703, 80 L.Ed.2d 177 (1984), and in a memorandum decision dated June 4, 1984, over three dissenting justices who would have noted probable jurisdiction and set the case for oral argument, the Supreme Court affirmed the three-judge district court's adoption of the redistricting plan submitted by plaintiffs. *Karcher v. Daggett*, —— U.S. ——, 104 S.Ct. 2672, 81 L.Ed.2d 869 (1984).

Two motions emanating from this litigation are now before this court. On November 15, 1984, plaintiffs filed an application for an attorney's fee award of nearly $600,000 under 42 U.S.C. § 1988. Two weeks later the State Defendants served interrogatories upon plaintiffs, which remained unanswered as of January 15, 1985, the hearing date of plaintiffs' attorney's fee application. At the hearing, plaintiffs' law firm represented that the interrogatories which State Defendants claimed were due by late December 1984 would be answered. On February 21, 1985, because the answers to the interrogatories were still outstanding, the State Defendants filed a motion, returnable March 11, 1985, to dismiss plaintiffs' application for an attorney's fee or, in the alternative, for discovery. The motion was carried by the court at the parties' request, as they attempted to work out the discovery problems; answers to most of the interrogatories have now been provided.

With respect to the pending motions, the court now has before it documents and additional information supplied by plaintiffs in support of their fee application: the affidavit and a supplemental affidavit filed by State Defendants in support of their motions to dismiss or, in the alternative, to compel discovery; all of the parties' briefs; and the almost weekly submissions by plaintiffs and State Defendants. Moreover, the court entertained additional oral argument on July 30, 1985. Notwithstanding the State Defendants' position, this court is of the view that there is enough information and documentation to decide the fee application without further submissions or an evidentiary hearing. *Compare*

*O'Bryan v. County of Saginaw, Mich.*, 722 F.2d 313, 314 (6th Cir.1983); *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir.1982).

The court will deny as moot the State Defendants' motion and turn its attention to the issues of liability for fees and the amount to be awarded. Plaintiffs seek an award against the State Defendants and the Legislature-Intervenors, but not against the Congressional-Intervenors. The two branches of the state government contend that they are not liable for an assessment, but that if they are, then only for a small portion of that which plaintiffs have requested. All of the arguments have been considered by the court and, for the reasons expressed herein, plaintiffs are entitled to an award to be assessed against the Legislature-Intervenors, but not the State Defendants, in the amount of $253,461, which amount includes costs and disbursements.

■ The threshold issue is whether the constitutional violation involved in this case is cognizable under 42 U.S.C. § 1983, because if the constitutional issue does not secure rights cognizable under section 1983, then there cannot be a basis for an attorney's fee award under 42 U.S.C. § 1988. The State Defendants especially have emphasized that this court and the Supreme Court found that the redistricting plan violated article I, section 2 of the United States Constitution, but made no mention of a violation under section 1983. Furthermore, defendants have pointed out that not every right secured by the Constitution has been incorporated into the sphere of fourteenth amendment protection and have suggested that article I, section 2 is only concerned with promoting the national interest over the state interest respecting a method of allocating power between the state and federal governments. Finally, defendants have observed that a statutory scheme for challenging congressional redistricting plans exists, but these statutes make no mention whatsoever of an attorney's fee award. Therefore, defendants have contended that article I, section 2

does not provide a basis for a section 1983 lawsuit and no attorney's fee pursuant to section 1988 may be awarded.

The majority opinion of the three-judge district court and the Supreme Court in this case held that the congressional redistricting plan was unconstitutional under article I, section 2 as interpreted by the Court in *Wesberry v. Sanders,* 376 U.S. 1, 7–8, 84 S.Ct. 526, 529–30, 11 L.Ed.2d 481 (1964). *See Daggett,* 535 F.Supp. at 981; 462 U.S. at 730, 103 S.Ct. at 2658. Writing for the Court in *Wesberry,* Justice Black held that, construed in its historical context, article I, section 2, which provides that representatives of Congress be chosen "by the People of the several States," means that as nearly as practicable, one person's vote in a congressional election is worth as much as another person's vote. *Wesberry,* 376 U.S. at 7–8, 84 S.Ct. at 529–30. In powerful language, the Court concluded

> [n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right.

*Id.* at 17–18, 84 S.Ct. at 534–35.

Although the *Wesberry* court did not reach the arguments that the challenged districting statute violated the equal protection and other clauses of the fourteenth amendment, *id.* at 8 n. 10, 84 S.Ct. at 530 n. 10, the overriding constitutional principle of equal representation espoused and vindicated in *Wesberry* is basically the same principle enunciated in cases holding that "the Equal Protection Clause requires that the seats ... of a bicameral state legislature ... be apportioned on a population basis." *Reynolds v. Sims,* 377 U.S. 533, 568, 84 S.Ct. 1362, 1385, 12 L.Ed.2d 506 (1964); *see Baker v. Carr,* 369 U.S. 186, 207–08, 82 S.Ct. 691, 704–05, 7 L.Ed.2d 663 (1962). The problem faced by the *Wesberry* and *Reynolds* Courts was the same—under the existing apportionment schemes,

votes in some thinly populated districts were given equal or greater weight than the value given votes in larger districts. *Reynolds,* 377 U.S. at 545–46, 84 S.Ct. at 1373; *Wesberry,* 376 U.S. at 8, 84 S.Ct. at 530.

The State Defendants concede that the state legislative districting cases, grounded on the equal-protection clause, secure individual rights protected by 42 U.S.C. § 1983. Nevertheless, these defendants argue that congressional districting cases, grounded on article I, section 2, do not secure individual rights protected by section 1983. Their argument is that article I, section 2 is a method of allocating power between the state and national governments, and was intended to promote federal interests over state interests. Thus, just as is the case with the supremacy and commerce clauses, article I, section 2 is not the kind of constitutional claim for which section 1983 provides a remedy. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 612–15, 99 S.Ct. 1905, 1913–15, 60 L.Ed.2d 508 (1979); *Consol. Freightways Corp. of Del. v. Kassel,* 730 F.2d 1139, 1144–45 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984).

Moreover, defendants have pointed out, Congress has enacted relevant statutes that provide a mechanism for challenging the constitutionality of apportionment of congressional districts and for states' conducting at-large elections if necessary. 2 U.S.C. § 1 *et seq.;* 28 U.S.C. § 2284(a). These statutes are comprehensive and silent as to attorney's fees, so that Congress must have intended that an award of attorney's fees should not be available with regard to article I, section 2 claims. *Cf. Smith v. Robinson,* —— U.S. ——, 104 S.Ct. 3457, 3468–74, 82 L.Ed.2d 746 (1984) (EHA is comprehensive and exclusive statutory scheme, silent as to attorney's fee, through which a plaintiff may assert denial of free appropriate public education claims; action may not be maintained under section 1983 or Rehabilitation Act, both of which provide for an award of attorney's fees).

The State Defendants' argument in this regard is adroit but must, nevertheless, be rejected. 2 U.S.C. §§ 2a(c), 2a(c)(5), 2c provide that states entitled to more than one representative in the House must establish "districts equal to the number of Representatives," and that those representatives must be elected at large if a state that must be redistricted is not "redistricted in the manner provided by the law." These provisions, however, are a far cry from constituting a comprehensive statutory scheme in which the absence of an attorney's-fee section compels the conclusion that article I, section 2 does not provide a basis for a section 1983 suit and an attorney's fee award under section 1988. Similarly, the dissent in *Smith* argued that Congress never considered the question of attorney's fees when enacting the Education of the Handicapped Act because the EHA predated section 1988 and the Rehabilitation Act, and that repeals by implication "are strongly disfavored," although the majority opinion noted "Congress apparently has determined that local and state agencies should not be burdened with attorney's fees to litigants who succeed...." *Smith*, 104 S.Ct. at 3471 n. 17, 3476 n. 3, 3477.

In addition, 28 U.S.C. § 2284(a) appears to cut against State Defendants' argument because a three-judge court must be convened "when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." The State Defendants have conceded, as they must, that state legislative-apportionment cases secure rights for which section 1983 provides a remedy, and state legislative-apportionment cases must be heard by a three-judge court just as congressional-apportionment cases must be. It does not follow from the absence of a statutory provision awarding attorney's fees in apportionment cases that article I, section 2 does not secure rights cognizable under section 1983. In this court's opinion, Congress never considered the question of attorney's fees in article I, section 2 cases; otherwise, unless Congress intended that attorney's fees not be available in state legislative-apportionment cases, the same statute, 28 U.S.C. § 2284, would not be applicable both to congressional districts and to state legislative districts.

Finally, as to the State Defendants' contention that article I, section 2 is merely concerned with the allocation of power between the federal and state governments, *Wesberry*, 376 U.S. at 7, 17–18, 84 S.Ct. at 529, 534–35, states that article I, section 2 is concerned with the principle "one person, one vote." Even if, historically speaking, article I, section 2 does not mean "one person, one vote," see *Wesberry*, 376 U.S. at 24–26, 84 S.Ct. at 538–540 (Harlan, J. dissenting), that would not mean that plaintiffs' rights in this case are not cognizable under section 1983. Rather, several concurring opinions and a dissenting opinion have maintained that the "one person, one vote" principle is grounded in the equal-protection clause of the fourteenth amendment. *See Daggett*, 462 U.S. at 746–48, 103 S.Ct. at 2667–69 (Stevens, J., concurring); *Wesberry*, 376 U.S. at 18–19, 84 S.Ct. at 535–36 (Clark, J., concurring in part and dissenting in part); *Gomillion v. Lightfoot*, 364 U.S. 339, 349, 81 S.Ct. 125, 131, 5 L.Ed.2d 110 (1960) (Whittaker, J., concurring); *Colegrove v. Green*, 328 U.S. 549, 569, 66 S.Ct. 1198, 1210, 90 L.Ed. 1432 (1946) (Black, J., dissenting). Thus, the deprivations of which plaintiffs complained in this case pertain to the right to vote and have that vote count as much as anybody else's vote, and regardless of whether the complaint challenges a congressional or state legislative apportionment, plaintiffs' rights are individual rights secured by section 1983, for which an attorney's fee award under section 1988 is available. *See In re Kansas Congress. Dist. Reapportionment Cases*, 745 F.2d 610, 613 (10th Cir.1984); *see also Daggett*, 462 U.S. at 782 n. 14, 103 S.Ct. at 2686 n. 14 (White, J., dissenting).

■ Defendants have contended further that even if plaintiffs are entitled to an attorney's fee respecting the successful challenge of the Feldman Plan, plaintiffs

are not entitled to an award of attorney's fees for the work performed during the remedy stage of the litigation, during which time several plans were submitted and one plan was adopted by the three-judge district court panel, whose decision was affirmed summarily by the Supreme Court. Defendants have argued that work performed in the remedy stage was unrelated and unnecessary to the crux of the litigation which was a constitutional challenge to the Feldman Plan. In addition, plaintiffs were really a "volunteer" at this remedy stage. They had challenged the Feldman Plan successfully so that, regardless of plaintiffs' further participation, the court was obligated to adopt a plan that satisfied the "one person, one vote" constitutional standard. Moreover, defendants have asserted that, as was the case with the other parties that submitted plans to the court during the remedy stage, plaintiffs participated merely to advance their partisan political objectives, so that an attorney's fee award for work performed during this stage of the litigation would be particularly inappropriate. Although there is a certain appeal to defendants' argument, it must be rejected.

After the Supreme Court affirmed the decision invalidating the Feldman Plan, the three-judge court fixed a date by which the State of New Jersey could enact a congressional redistricting plan that passed constitutional muster, and a date for a hearing on further proceedings if New Jersey were unable to adopt such a plan. The New Jersey Legislature adopted a plan, but it was vetoed by the Governor, and there was insufficient support in the Legislature to override a veto. Thus, a hearing was held, at which time various parties submitted six redistricting proposals. *Daggett v. Kimmelman,* 580 F.Supp. at 1260–61. Defendants have opined that the plans they submitted were good plans and constitutionally unassailable, but defendants concede, as they must, that the three-judge district court and the Supreme Court accepted and adopted the plan submitted by plaintiffs.

Both plaintiffs and the State Defendants have directed the court's attention to the Supreme Court's recent decision in *Webb v. Board of Educ. of Dyer County,* —— U.S. ——, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). In *Webb,* a public school teacher contended that his termination was racially motivated in violation of his constitutional rights. *Id.* 105 S.Ct. at 1925. Under Tennessee law, Mr. Webb was entitled to a hearing with respect to the charges of dismissal but, after the series of hearings with the school board proved unsuccessful, petitioner commenced an action in federal court alleging violations under 42 U.S.C. §§ 1981–1983, 1985. 105 S.Ct. at 1925. The matter was eventually settled by entry of a consent decree awarding petitioner damages and reinstating petitioner "as having resigned on the day of dismissal." *Id.* at 1926. As to petitioner's application for an attorney's fee award pursuant to 42 U.S.C. § 1988, the district court, which was affirmed by the Sixth Circuit, resolved most of the issues as to the fee in petitioner's favor, but "accepted respondents' position that the time spent in the school board proceedings should be excluded...." 105 S.Ct. at 1926.

In affirming, the Supreme Court stated that Congress authorized an attorney's fee award under section 1988 in an action or proceeding to enforce section 1983. 105 S.Ct. at 1928. The Court concluded that the administrative proceedings established by state law were not part of the proceedings to enforce the section 1983 claim, which was independent from the state administrative avenue of relief and that, therefore, the district court did not abuse its discretion in denying "fees for time spent pursuing optional administrative remedies...." 105 S.Ct. at 1928–29. The Court noted that petitioner failed to demonstrate "that any discrete portion of the work product from the administrative proceedings was ... both useful and of a type ordinarily necessary to advance the civil rights litigation," and distinguished those cases in which state administrative proceedings must be pursued and exhausted before a section 1983 complaint may be maintained. 105 S.Ct. at 1927–29.

*Webb* may be distinguished from the present case on two grounds. First, the remedy stage did not involve administrative or other nonjudicial proceedings; rather, it involved proceedings before the three-judge district court and the Supreme Court. Second, the remedy stage occurred after the Feldman Plan was declared unconstitutional and a constitutional redistricting plan had to be developed; the remedy stage was not a separate proceeding pursued as an avenue of relief *before* the constitutional challenge to the Feldman Plan was instituted in this court.

In one sense, the State Defendants have argued persuasively that plaintiffs' participation in the remedy stage was not necessary to protect their constitutional rights. Once the Feldman Plan was declared unconstitutional, a constitutional plan had to be adopted. If the Legislature failed to do so, then the court was obligated to do so. Nevertheless, this court concludes that plaintiffs' participation in the remedy stage, after New Jersey failed to enact a redistricting plan, was "useful and of a type ordinarily necessary" to enforce section 1983. *See Webb*, 105 S.Ct. at 1928–29, 1929–30, 1934 (Brennan, J., concurring in part and dissenting in part); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). The relief for which plaintiffs prayed was not only that the court rule that the Feldman Plan was unconstitutional, but also that the court retain jurisdiction until a constitutional plan was adopted and defendants complied with the plan promulgated by the court.

Although without plaintiffs' participation, the court would have adopted a plan that passed constitutional scrutiny, plaintiffs' participation vindicated their civil rights completely because the court adopted plaintiffs' plan, which was the one of all considered by the court that best achieved the "one person, one vote" constitutional criterion. There appears to be a paucity of cases treating extensively the issue of whether a "prevailing party" is entitled to an attorney's fee award for work performed in the remedy stage of redistricting/reapportionment litigation. There are reported decisions, however, in which an attorney's fee was awarded for work performed during the remedy stage. *In re Kansas Congress. Dist. Reapportionment Cases*, 745 F.2d at 612–14; *see also Connor v. Winter*, 519 F.Supp. 1337, 1341–46 (S.D.Miss.1981) (fees awarded to prevailing plaintiffs in remedy stage even when reapportionment plan ultimately put into effect was enacted by Mississippi Legislature, whose plan superseded court-approved plan).

As mentioned, defendants in this case have contended that at the remedy stage all parties, including plaintiffs, were really concerned with advancing their own partisan political interests, rather than attempting to vindicate civil rights which the court had already accomplished when it invalidated the Feldman Plan. *See Gautreaux v. Chicago Housing Authority*, 610 F.Supp. 29, 30–31 (N.D.Ill.1985). This court would be naive if it did not recognize the appeal of defendants' argument. It cannot be maintained seriously that at the remedy stage the parties were not interested at all in promoting politically favorable plans. The fact that the remedy stage was not completely untainted by political issues does not preclude plaintiffs from recovering an attorney's fee award for vindicating constitutional rights. *See In re Kansas Congress. Dist. Reapportionment Cases*, 745 F.2d at 613–14.

Continuing this argument, defendants have asserted that given plaintiffs' position at oral argument at the remedy stage, the law firm is unable now to steer the course between the rocky shores of Scylla and the whirlpool of Charybdis. That is, on the one hand, if the law firm achieved exactly what its client desired, then an attorney's fee should be denied at the remedy stage because the plan the court adopted merely implemented plaintiffs' partisan political objectives. On the other hand, if the law firm advocated a plan that came closest to satisfying the "one person, one vote" criterion with mathematical precision, the clients' partisan political interests notwith-

standing, then an award of an attorney's fee should be denied at the remedy stage on the grounds that plaintiffs were not a prevailing party.

The answer to defendants' argument is that, while plaintiffs may very well have been happier if the plan submitted by the law firm on behalf of plaintiffs favored their partisan political interests more than it did, the plan "achieve[d] the lowest population deviation of any plan ... presented." *Daggett v. Kimmelman*, 580 F.Supp. at 1264. While it is beyond cavil that the Feldman Plan was disadvantageous with respect to Republican Party political interests, this lawsuit was, nevertheless, brought to vindicate civil rights—to invalidate a constitutionally infirm redistricting plan and ensure that the court adopted a plan that best satisfied the "one person, one vote" constitutional principle. Perhaps a different result would be warranted if all of the plaintiffs had rejected the plan argued for by the law firm, so that it could be contended that the law firm acted as a maverick. That is not this case, however. Only one plaintiff terminated the law firm's authority to act on his behalf, and all of the other plaintiffs capitulated to the law firm's good judgment respecting what kind of plan was likely to be most acceptable to the court as consistent with the "one person, one vote" principle. *See id.* The law firm acted with the authority of the remaining plaintiffs, and the court's adoption of the redistricting plan proposed by plaintiffs vindicated their rights; thus, plaintiffs were the prevailing party at the remedy stage. *See Hensley v. Eckerhart*, 461 U.S. at 433–34, 103 S.Ct. at 1939–40.

In further support of their contention that no attorney's fee should be awarded at the remedy stage, defendants have noted that a taxpayers political action committee (PAC) submitted two redistricting plans to the three-judge district court, but that nobody could argue seriously that this PAC should be eligible for an attorney's fee award. The taxpayers PAC is not entitled to an attorney's fee award because neither plan it offered was adopted by the court, so that it could not be deemed a prevailing party. Whether the taxpayers PAC would be entitled to an award of an attorney's fee if the court had adopted one of the plans submitted by the PAC is not an issue before the court, and need not be decided. If, however, defendants believe that the taxpayers PAC is precluded from recovering an attorney's fee under section 1988 because it was not a party when the Feldman Plan was invalidated, then defendants appear to be mistaken.

In *United States v. Board of Education, etc.*, 605 F.2d 573, 574–76 (2d Cir.1979), after the Government sued a board of education alleging violations of the fourteenth amendment and the Civil Rights Act of 1964, the parties entered into a consent decree in which the board of education was required to devise a desegregation plan. The board of education proposed a remedial plan, and "[t]he South End Education Committee, an organization of Puerto Rican parents and community leaders, along with several individuals, was allowed to intervene...." 605 F.2d at 574. Intervenor convinced the court to enjoin implementation of the board of education's plan. This scenario continued for approximately three years until the court finally accepted a plan proposed by "the Barnard school P.T.A." *Id.* at 574–75. Subsequently, intervenors filed a motion for attorney's fees. *Id.* at 575.

Reversing the district court's order denying the motion on the grounds that intervenor was not a prevailing party, the Second Circuit held that intervenor was a party within the meaning of Fed.R.Civ.P. 24, and did not have to be a party at the time the consent decree was entered in order to be a prevailing party. 605 F.2d at 576. Even though the remedial plan adopted by the court was not intervenor's, the court found that the intervenor was entitled to an award of an attorney's fee because the organization "worked in support of a plan which better served [its] valid interests. The remedy ultimately adopted bore a substantial resemblance to the plan intervenors supported...." *Id.* at 577. In this case the taxpayers PAC was an intervenor.

*Daggett v. Kimmelman,* 580 F.Supp. at 1262. The taxpayers PAC, if one of its proposed redistricting plans had been adopted by this court, conceivably might be denied an attorney's fee award under section 1988, but not because it intervened *after* the court invalidated the Feldman Plan. Therefore, despite defendants' often forceful arguments, this court finds that plaintiffs are entitled to an attorney's fee award under section 1988 for work performed during the remedy stage.

The next question facing the court is who is liable for the attorney's fee award. At oral argument plaintiffs informed the court that they were not seeking fees from any member of Congress and no award shall be assessed against the Congressional-Intervenors. *See May v. Cooperman,* 578 F.Supp. 1308, 1313 n. 3 (D.N.J.1984).[1] Plaintiffs are seeking fees from the state, not from any individual, but from the executive and legislative branches of the government of the State of New Jersey. With respect to the liability of the executive branch, the State Defendants, and the legislative branch, the Legislative-Intervenors, this court agrees with that which was said by Judge Debevoise in *May v. Cooperman.*

In *May v. Cooperman,* the Legislature passed a "moment of silence" statute and overrode the Governor's veto. 572 F.Supp. 1561, 1562–65 (D.N.J.1983). The Attorney General of New Jersey stated publicly that he would neither defend the constitutionality of the statute nor discipline teachers who refused to implement the "moment of silence." The New Jersey Department of Education and its Commissioner, the named defendants, sent copies of the statute to local school boards, but apparently did nothing to ensure that the local boards were implementing the "moment of silence." 578 F.Supp. at 1310–15. Judge

Debevoise concluded that under these circumstances, where the state defendants did nothing to enforce the unconstitutional statute and "consistently [took] a principled position in refusing to defend a statute which the state's highest executive legal authority deemed unconstitutional," an award of fees against the state defendants would be unjust. *Id.* at 1315–16.

On the other hand, Judge Debevoise awarded fees against the defendant-intervenor, the New Jersey Legislature. Inasmuch as the state defendants refused to defend the "moment of silence," the Legislature, which had enacted the statute, "actively litigated this case from the day plaintiffs filed suit." *Id.* at 1316. Conceding that under *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 732–34, 739, 100 S.Ct. 1967, 1974–76, 1978, 64 L.Ed.2d 641 (1980), the New Jersey Legislature enjoyed absolute immunity for promulgating the "moment of silence" statute, Judge Debevoise held that once the Legislature intervened it "abandoned [its] legislative role and took on a quasi-enforcement role by intervening to defend the statute," and was therefore no longer shielded from an assessment of an attorney's fee. *May v. Cooperman,* 578 F.Supp. at 1316–17.

The principal distinction between *May v. Cooperman* and the present case, in this court's view, is that in the former the Governor of New Jersey vetoed the "moment of silence" statute, but in the latter the Governor signed the Feldman Plan into law. For purposes of the motions now before this court, however, this distinction is not meaningful. The rationale behind the parties' liability for fees in *May v. Cooperman* seems to be whether the party enforced or defended in litigation the statute that was declared unconstitutional. *See* 578 F.Supp. at 1313, 1315–17. If a legislature is shielded from an assessment

---

1. The decision declaring the "moment of silence" statute unconstitutional is reported at 572 F.Supp. 1561 (D.N.J.1983). Judge Debevoise's reconsideration of his decision denying an award of an attorney's fee is reported at 578 F.Supp. 1308 (D.N.J.1984), and the decision as to the amount awarded is reported at 582 F.Supp. 1458 (D.N.J.1984). The case has been appealed to the Third Circuit, before whom oral argument was held. *May v. Cooperman,* appeal argued, Nos. 83–5890 and 84–5126 (consol.) (3d Cir. Oct. 26, 1984), *appeal reargued* (Aug. 13, 1985).

of an attorney's fee for enacting a statute that is later declared unconstitutional, *see Supreme Court of Va. v. Consumers Union*, 446 U.S. at 732–34, 739, 100 S.Ct. at 1974–76, 1978; *May v. Cooperman*, 578 F.Supp. at 1316, then the executive branch, the Governor, should also be shielded from an assessment of an attorney's fee merely for signing into law the statute that is later declared unconstitutional.

■ The State Defendants have not defended the Feldman Plan in litigation; no party has argued to the contrary. For the most part, the State Defendants were silent during this litigation; they did not enforce the Feldman Plan, and really did not take a position on the constitutionality of the Feldman Plan. While the State Defendants submitted two redistricting plans during the remedy stage, *Daggett v. Kimmelman*, 580 F.Supp. at 1263–64, and conducted the 1982 congressional elections under the Feldman Plan after Justice Brennan issued the stay, *Karcher v. Daggett*, 455 U.S. at 1307, 102 S.Ct. at 1300, these facts do not warrant, in this court's view, an assessment of fees against the State Defendants. At oral argument plaintiffs urged that the State Defendants' failure to take a position in this litigation amounted to taking a position, but the court does not find this argument persuasive. The State Defendants neither defended nor enforced the Feldman Plan, except after Justice Brennan's stay, and the court agrees with Judge Debevoise's conclusion that, under these circumstances, the State Defendants should not be held liable for an award of an attorney's fee. *See May v. Cooperman*, 578 F.Supp. at 1314 n. 4, 1315–16; *but see Singer v. State*, 95 N.J. 487, 493–94, 472 A.2d 138 *cert. denied*, — U.S. —, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984) (the power, if not the duty, to enforce the state's laws satisfies prerequisite of state action and defendants do not enjoy immunity from claims brought under sections 1983 and 1988).

■ As to the Legislature-Intervenors, this court is also in accord with the analysis set forth in *May v. Cooperman*. The New Jersey Legislature was absolutely immune from an award of an attorney's fee for enacting the Feldman Plan, but once the Legislature intervened to defend the statute, even if it did so because the executive branch refused to defend the statute, the Legislature took on a quasi-enforcement role, and gave up its immunity. *See* 578 F.Supp. at 1317; *Consumers Union of U.S. v. Virginia State Bar*, 688 F.2d 218, 220–21 (4th Cir.1982), *cert. denied*, 462 U.S. 1137, 103 S.Ct. 3124, 77 L.Ed.2d 1375 (1983). Therefore, regardless of the Legislature's good faith, *see Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673, *reh'g denied*, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980), the Legislature-Intervenors in this case are liable for an assessment of an attorney's fee.

A few issues must be treated before the "lodestar" is determined. First, under rule 46 of the general rules of this court, effective October 1, 1984, plaintiff's application for an attorney's fee should have been filed "within 30 days of the entry of judgment or order, unless extended by the Court." Litigation on the merits of this case ended with the Supreme Court's summary affirmance of the district court's adoption of plaintiffs' proposed plan. *Karcher v. Daggett*, — U.S. —, 104 S.Ct. 2672, 81 L.Ed.2d 869 (1984). At the very latest, plaintiff's application for an attorney's fee should have been filed by the end of October 1984, but it was not filed until the middle of November. At the hearing held January 15, 1985, plaintiffs' counsel represented that the fee application was not filed until November 15, 1984, because the law firm did not want the motion for an attorney's fee in this redistricting case to influence the November 1984 elections. While the court does not question the motive behind this decision, permission for an extension of time to file from this court was neither requested nor granted. All of the parties opposing the fee application have contended that the untimely motion should be dismissed because it would cause undue surprise and prejudice. Although

this court may have the discretion to dismiss plaintiffs' application in its entirety because it is untimely, *see Pitts v. Freeman,* 755 F.2d 897, 898 (11th Cir.1985), that would be a harsh result. The troublesome untimeliness of plaintiffs' fee application, however, contributes to this court's decision not to adjust the award upward to reflect the "delay in receipt of payment," a factor that the court must consider, presumably even if the issue is not raised by plaintiffs in the fee application. *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 583 (3d Cir.1984); *Institutionalized Juveniles v. Sec. of Pub. Wel.,* 758 F.2d 897, 922 (3d Cir.1985); *accord Louisville Black Police Off. v. City of Louisville,* 700 F.2d 268, 274–76 (6th Cir.1983).

Rule 46(B) of the general rules of this court requires the attorney seeking compensation to "include an affidavit describing all fee agreements...." Although plaintiffs' pleadings indicated that a section 1988 award would be sought, the affidavit in support of the motion for an attorney's fee does not comply with the rule. Plaintiffs' law firm claimed no specific privilege of confidentiality to explain the absence of this information, and the State Defendants requested this information on several occasions before it was finally provided. All of the above aside, the Third Circuit has recently held that the existence of a contingent fee arrangement does not preclude an attorney from obtaining a section 1988 award, because "[t]he statute contains no contingent fee exception." *Cunningham v. City of McKeesport,* 753 F.2d 262, 268 (3d Cir.1985); *see also Sullivan v. Crown Paper Bd. Co.,* 719 F.2d 667, 669–70 (3d Cir.1983).

■ The starting point for determining a reasonable attorney's fee is multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate; this is the "lodestar." *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. The opposing parties' most vehement objection to an award is directed at

the remedy stage; these parties have argued that plaintiffs cannot be compensated for work done on state-law issues, such as preserving municipal and county boundaries. This argument must be rejected for two reasons. First, plaintiffs' plan was accepted by the three-judge district court because it sacrificed the state-law concerns in order to achieve the lowest population deviation possible; it satisfied better than the other plans submitted the "one person, one vote" constitutional standard.

Second, while it would be ridiculous to think that plaintiffs ignored completely municipal boundaries, whether incumbents would be pitted against one another, and compactness, etc., these state-law issues and concerns of which the opposing parties speak were not separate and distinct issues from the constitutional claim that is the subject of this litigation. *Compare In re Kansas Congress. Dist. Reapportionment Cases,* 745 F.2d at 613–14. This is not a case in which plaintiffs lost on the section 1983 claim but prevailed on distinct state-law claims. Rather, plaintiffs prevailed on the section 1983 claim, and also prevailed at the remedy stage because their plan did not compromise the constitutional standard of "one person, one vote" for state interests. Thus, the cases on which the parties opposing the fee application rely, see *Raley v. Fraser,* 747 F.2d 287, 290–92 (5th Cir. 1984); *Luria Bros. & Co. v. Allen,* 672 F.2d 347, 357–58 (3d Cir.1982), are distinguishable.

■ Only hours reasonably expended on the litigation are compensable under section 1988, so that hours not properly billable to the client may not be billed to the adversary. *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939. Plaintiffs' counsel did fine and thorough work in a complicated case with able adversaries, and it is readily understandable that a tremendous amount of time was spent on legal research, strategy sessions, and in other conferences, and that this work was performed by several attorneys. In the court's view, however, two factors warrant a lower lodestar than that which plaintiffs

have sought. The first factor is that a portion of the work performed was duplicative. The second factor is that only partners at the law firm rendered services in this litigation and, consequently, all of the work performed was billed at "partner rates." Accepting plaintiffs' judgment that non-attorney personnel lacked both the qualifications and competency to perform work on this case, the court nevertheless believes that some, if not a good deal, of the legal research could have been performed by associates and, therefore, billed at a lower rate. In ordering a reduction of the proposed lodestar, this court has been careful not to effect a "double reduction," that is, reduce both the hourly rate and the number of hours for work the court deems unnecessary. Cf. In re Fine Paper Antitrust Litigation, 751 F.2d at 599. A few examples will suffice.

Plaintiff's affidavit of services rendered indicates that 65.5 hours were spent preparing the memorandum of law in opposition to the first stay application filed in the Supreme Court; 7.5 hours were expended by Mr. Hellring, 14.75 by Mr. Goldstein, 12.25 by Mr. Raymar, and 31 by Mr. Dreyfuss. With respect to the February 26, 1982, hearing before the three-judge court in Trenton, Mr. Goldstein has billed 7 hours, Mr. Raymar 6.5, and Mr. Dreyfuss 6.5. All four of the attorneys have billed 6.5 hours for oral argument at the Supreme Court on March 2, 1983, and in addition, although Mr. Hellring who argued before the Court has billed approximately 35 hours solely for preparation for oral argument, Mr. Goldstein has also billed 11.5 hours for oral argument preparation, Mr. Raymar 8 hours, and Mr. Dreyfuss 15.5 hours. Plaintiffs' affidavit of services and client service records are replete with instances in which three or four attorneys billed large numbers of hours for strategy and other conferences (see Affidavit of Services Feb. 27 to Mar. 6, 1982; Mar. 15 to 18, 1982; July 8, 1983; July 12, 1983; Feb. 2 to 3, 1984).

In this court's opinion, the attorneys did not in every instance need to spend all of the hours each of them did on legal research, three and four attorneys were not necessary in court, not all of the time spent preparing for oral argument by all four attorneys was necessary, and not every attorney should be compensated for time spent in conference. See May v. Cooperman, 582 F.Supp. at 1460–61. Rather than making a determination respecting each piece of the litigation as to "whether a particular motion could have been done in 9.6 hours instead of 14.3 hours," see Copeland v. Marshall, 641 F.2d 880, 903 (D.C. Cir.1980) (en banc), this court, in its discretion, will reduce the number of hours requested by ten percent. See Louisville Black Police Off. v. City of Louisville, 700 F.2d at 279. This reduction will be applied to each attorney on a pro rata basis, so that of the 1,697.76 hours reasonably expended (1,886.4 requested), Mr. Hellring will be treated as having expended 485.46 hours (539.4 requested), Mr. Goldstein at 507.97 (564.41 requested), Mr. Raymar at 162.30 (180.33 requested), and Mr. Dreyfuss at 542.03 (602.26 requested).

Having calculated the number of hours reasonably expended, the court's next inquiry is the reasonable hourly rate. What plaintiffs have asked for in determining the lodestar is high. Mr. Hellring's customary hourly rate is $300, Mr. Goldstein's $200, and Messrs. Dreyfuss and Raymar bill at $150. The court must look to what the attorney's time normally commands in the marketplace, Cunningham v. City of McKeesport, 753 F.2d at 267–68, as well as "to the prevailing market rates in the relevant community." Blum v. Stenson, 104 S.Ct. at 1547.

Although the court must look to the relevant community, it is interesting to note that in other recent legislative and congressional redistricting cases; a Topeka, Kansas, firm was awarded an attorney's fee at an hourly rate of $75, and a large Chicago firm was compensated at the hourly rate of $100 to $175 for partners and $65 to $79 for associates. See In re Kansas Congress. Dist. Reapportionment Cases, 745 F.2d at 613; Rybicki v. State Bd. of Elections of State of Ill., 584 F.Supp. 849, 858

(N.D.Ill.1984). Recently Judge Debevoise awarded counsel for the prevailing plaintiffs in the "moment of silence" litigation, a case he found to present novel issues of constitutional law with aggressive and skilled opposition, hourly rates of $125 and $85, but reduced from $150 to $125 the hourly rate of Professor Cantor, a constitutional law professor at Rutgers Law School. *May v. Cooperman,* 582 F.Supp. at 1460–62; *see also Grendel's Den, Inc. v. Larkin,* 582 F.Supp. 1220, 1228 (D.Mass.), *modified,* 749 F.2d 945, 955–56 (1st Cir. 1984) (District court held Professor Tribe of Harvard Law School, one of the nation's leading constitutional-law authorities, entitled to hourly rate of $275; but First Circuit, conceding the professor's academic distinction, reduced hourly rate to $175).

In their brief in support of the application for an attorney's fee, plaintiffs have brought to the attention of this court several cases in the District of New Jersey in which judges awarded hourly rates ranging from $60 to $250. Despite this court's belief that the hourly rates charged are high, *see Hall v. Borough of Roselle,* 747 F.2d 838, 841 (3d Cir.1984), plaintiffs have sustained their burden of establishing the reasonableness of the $200 hourly rate charged by Mr. Goldstein as well as the $150 hourly rates charged by Messrs. Raymar and Dreyfuss. *See Council Enterprises, Inc. v. Atlantic City,* 200 N.J.Super. 431, 446–47, 491 A.2d 789 (Law Div. 1984). The $300 hourly rate charged by Mr. Hellring, however, is excessive when compared to the prevailing market rate in the community in which he practices and will be reduced to $250. As will be explained below, the amounts calculated from these hourly rates must be reduced to reflect the fact that only partners worked on this case, and some of the tasks performed during the litigation cannot be compensated at partner rates. Once again, a few examples will suffice.

Plaintiffs' affidavit of services rendered indicates that from July 8 through November 10, 1982, approximately 190 hours were spent on preparation of the Supreme Court brief. Of those hours, most were expended by Mr. Hellring (49) and Mr. Dreyfuss (133.9). Under plaintiffs' fee schedule, the lowest hourly rate charged for any of the work done on the Supreme Court brief was $150. It is this court's opinion that at least some of that work could have been performed by associates and billed at a lower rate. *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983); *McMullan v. Thornburgh,* 570 F.Supp. 1070, 1073–75 (E.D.Pa.1983).

Plaintiffs' time sheets show trips to the airport, New Brunswick, and Washington, D.C., to meet with clients and adversaries and to appear in court, but these records are inadequate as to how much time was spent in travel and how much in conference or in court (see Affidavit of Services and time sheets of Mar. 1, June 22, and July 21, 1983). Although plaintiffs have explained that they were able to discuss strategy and perform other work related to the case while at the same time accomplishing the journey, their records are insufficient to support this assertion.

■■■ Rather than fixing different rates for different kinds of legal services performed by the same attorney and reducing greatly the rates for time spent travelling or filing papers in court, *see Brewster v. Dukakis,* 544 F.Supp. 1069, 1080 (D.Mass.1982), the court will reduce the lodestar by twenty percent. It was the fee applicant's prerogative to staff every task involved in this case with partners, but that does not automatically entitle the law firm to recover "partner rates" for everything. *See Poston v. Fox,* 577 F.Supp. 915, 919–20 (D.N.J.1984). The lodestar is calculated as follows:

| Mr. Hellring | 485.46 | hours | × | $250 | = | $121,365.00 |
|---|---|---|---|---|---|---|
| Mr. Goldstein | 507.97 | hours | × | $200 | = | 101,594.00 |
| Mr. Raymar | 162.3 | hours | × | $150 | = | 24,345.00 |
| Mr. Dreyfuss | 542.03 | hours | × | $150 | = | 81,304.50 |
| Totals | 1,697.76 | hours | | | | $328,608.50 |

The lodestar amount of $328,608.50, reduced by twenty percent to reflect the aforementioned considerations, leaves plaintiffs with an award of $262,886.80. Plaintiffs have also requested a fifty percent upward adjustment of the fee. In short, the quality of the work rendered by the Hellring firm, the complexity of the case and its contingent nature are all adequately reflected in the hourly rate and the number of hours reasonably expended on the litigation. *Blum v. Stenson*, 104 S.Ct. at 1548–49. Any upward adjustment would produce a windfall for the law firm. *See id.; May v. Cooperman*, 582 F.Supp. at 1461–63.

Plaintiffs already have been paid $15,000 for services rendered, which, when subtracted from $262,886.80 leaves $247,886.80. Plaintiffs are also entitled to costs and disbursements. *See Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). The amount plaintiffs have requested, $7,432.26, however, must be reduced. Inasmuch as the number of hours requested was reduced to reflect duplication, costs and disbursements also will be reduced to reflect this factor. If it is excessive for four partners to travel to Washington, D.C., and bill oral argument time, then some of the costs and disbursements incurred are also excessive. Moreover, because plaintiffs' costs and disbursements records are not explained in detail, this court cannot determine exactly what has been requested. It is very possible, if not probable, that plaintiffs have included in their request "[t]he expenses of printing briefs, motions, petitions or jurisdictional statements" to the Supreme Court, but under rule 50.3 of the rules governing that court, these costs "are not taxable." *See also Grendel's Den, Inc. v. Larkin*, 749 F.2d at 957. In this court's discretion, costs and disbursements will be reduced 25 percent to $5,574.20.

Therefore, the total amount to which plaintiffs are entitled, to be paid by the Legislature-Intervenors, is $253,461. An order accompanies this opinion.