See also, D.C., 536 F.Supp. 538.

Samuel P. GODDARD, Art Hamilton, and Jones Osborn, Plaintiffs,

San Carlos Apache Tribe, Ned Anderson, Herbert Edwards, Leo Natsyn, and Phillip Cassadore, Intervenors-Plaintiffs,

v.

Bruce BABBITT, Governor of Arizona; and Rose Mofford, Secretary of State of Arizona, Defendants,

Thomas J. Pappas, Intervenor-Defendant.

No. Civ. 81–1497 PHX CAM.

United States District Court,
D. Arizona.

July 20, 1982.

As Corrected Aug. 24, 1982.

---

John P. Frank, David J. Cantelme, Lewis & Roca, Paul F. Eckstein, Craig W. Soland, Brown & Bain, Phoenix, Ariz., Joe P. Sparks, Sparks & Siler, Scottsdale, Ariz., for intervenors-plaintiffs San Carlos Apache Tribe, Ned Anderson, Herbert Edwards, Leo Natsyn and Phillip Cassadore.

N. Warner Lee, Ruley, Carlock & Ralston, Steven J. Silver, Sp. Asst. Atty. Gen., Campana & Horne, Phoenix, Ariz., for Rose Mofford.

Bruce Babbitt, pro se.

Andrew D. Hurwitz, Phoenix, Ariz., for Babbitt.

John E. Herrick, Knollmiller, Herrick & Brown, Tempe, Ariz., for intervenor-defendant Pappas.

### ORDER

MUECKE, Chief Judge.

On April 2, 1982, this Court entered Findings of Fact and Conclusions of Law, in addition to a Judgment, which concluded litigation challenging the constitutionality of the 1981 reapportionment of the State Legislature and Arizona's congressional districts. 536 F.Supp. 538. In executing these documents, the Court, after an independent factual and legal examination, approved a settlement submitted to it by the parties on behalf of the majority and minority caucuses of the Arizona Senate and House of Representatives.

Subsequently, the Court has received Motions for Attorney Fees from the plaintiffs, Samuel Goddard, Art Hamilton, and Jones Osborn; the intervenor-plaintiff, San Carlos Apaches; and intervenor Thomas Pappas, chairperson of the Republican Party. These parties all argue that they are prevailing parties in a civil rights case, and are therefore eligible for reimbursement of their attorney's fees, pursuant to 42 U.S.C. § 1988. They ask for a total of $299,695.50.

This Court is familiar with the award of attorney's fees in such cases. Last year, this Court ordered that each party assume its own attorney's fees at the conclusion of a civil rights case. The Ninth Circuit Court of Appeals, while affirming this Court's ruling on the merits of the case, reversed the decision with respect to the attorney's fees question. *Collins v. Chandler,* 644 F.2d 759 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 322, 70 L.Ed.2d 163 (1982). The Court of Appeals ruled that a prevailing party should ordinarily recover attorney's fees unless "special circumstances" exist that would render such an award unjust. *Id.* at 763.

Accordingly, between the dictates of the appellate court and the law as passed by the Congress, 42 U.S.C. § 1988, this Court's function is limited to determining whether the parties are in fact prevailing parties, whether "special circumstances" exist, and if necessary, the reasonableness of an award.

The defendants have contested each of these issues. It should be noted, that while objecting to the other parties' appeal for public reimbursement, the fees incurred by the attorneys for defendant Mofford will, in any case, be paid by the taxpayer, independent of any order of this Court.

This lawsuit was initiated by the plaintiffs, who have been represented by two large Phoenix law firms, Lewis and Roca, and Brown and Bain. With their suit, plaintiffs sought a ruling that the reappor-

tionment and redistricting maps approved by the legislature were unconstitutional. They asserted a number of grounds for the alleged constitutional infirmities and sought the adoption of their own plans or plans drawn by the Court. Ultimately, the plaintiffs represented their *de facto* clients, the minority caucus of the state legislature, in the negotiations which resulted in the plans finally approved by the Court.

The San Carlos Apaches intervened as plaintiffs in this suit. They were represented by the law firm of Sparks and Siler, who alleged, on behalf of their clients, that plans which divided their reservation into three legislative and three congressional districts diluted the San Carlos Apaches' voting strength. With their intervention they sought the reunification of the reservation into one legislative and one congressional district. This aim was accomplished through the participation of their attorneys in the settlement negotiations which resulted in the plans ultimately approved by this Court.

Intervenor Pappas is the chairperson of the Arizona Republican Party. He intervened as a defendant, although his amended answer establishes that he believed the Congressional plan adopted by the legislature was unconstitutional. Pappas asserted that the plan was infirm in that it violated the constitutional requirement that districts be drawn so that they contain as equal a number of people as is practicable. The intervening defendant sought the promulgation of a Congressional plan which accomplished this. To this end, the firm of Knollmiller, Herrick and Brown, the attorneys for Pappas, represented the majority caucus of the state legislature in the negotiations which produced the settlement plans adopted by the Court.

■ In determining whether a party has prevailed, this Court is compelled to follow the test articulated by the Ninth Circuit—a prevailing party within the meaning of § 1988 is one which succeeds on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit. *Sethy v. Alameda County Water District,* 602 F.2d 894, 897–98 (9th Cir. 1979).

■ Each of the parties applying for attorney's fees played an instrumental role in the negotiations which produced the stipulated plans adopted by the Court. Additionally, each of the applicants has received a significant amount of the relief that they prayed for when they entered the suit. Under such circumstances, the conclusion that each was a prevailing party is mandated by the case law that this Court must follow.

The defendant has suggested that the applicants should be compensated only for the work performed on the issues in which they were successful. For this notion, the Court has been referred to the case of *Bartholomew v. Watson,* 665 F.2d 910, 914 (9th Cir. 1982).

The Ninth Circuit's most recent lesson on this subject, however, suggests that parties are not to be compensated by prevailing issue, so much as prevailing claims for relief. *Twin Cities Sportservice v. Charles O. Finley & Co.,* 676 F.2d 1291 (9th Cir. 1982). The fact that this litigation was concluded by a settlement, obviating the need for resolution of all of the issues raised by the parties, recommends the aptness of *Twin Cities'* approach, to what could otherwise be a computational nightmare. The claimants' applications will therefore not be slashed by counting issues. Each applicant prayed for the entry of new congressional and legislative plans, which relief was granted. Should they satisfy the other relevant criteria, they will be remunerated as a prevailing party, not as a semi-prevailing or partially-prevailing party.

Defendant Mofford further contends that special circumstances exist which render the award of fees unjust. Mofford argues that the suit was politically contrived, that the plaintiffs elected not to participate in the legislative process, that the parties had agreed that no attorney's fees would be made a part of the settlement, that the application for fees was untimely, and that the defendant's good faith militates against an attorney's fee award.

■ Two considerations are relevant to the determination of whether special circumstances exist so as to make an award of fees unjust: (1) whether the award of fees would further the congressional purpose in adopting the attorney's fees statute; and, (2) the balance of equities. *Seattle School District No. 1 v. State of Washington,* 633 F.2d 1338, 1348 (9th Cir. 1980).

■ In light of the extensive attention that courts have given to cases involving voting rights, it would be absurd to suggest that this suit, involving important constitutional rights, is not the type of case where an award would further congressional aims. The Court is aware of at least four other states that have recently awarded attorney's fees to prevailing parties in redistricting cases.

Mofford's assignment of special circumstances, instead seems directed to the balance of equities argument. The initial argument, that this law suit is politically contrived and that it should have been precluded due to the minority caucuses' failure to participate in the legislative process, is unconvincing. Redistricting, by definition, is a politically partisan exercise. The Democrats in the Arizona Legislature, lacking the necessary votes, were not active participants in the formulation of the challenged legislation.

Prior to the passage of the redistricting legislation, however, Democratic spokespersons did attempt to correct the Plans' infirmities, later challenged in this suit. Governor Babbitt's veto message similarly pointed out constitutional shortcomings in the bills. These admonitions brought no changes and the redistricting legislation passed over the protestations and the Governor's veto. The Democrats' action in the legislature was minimized more probably by realism, than by a lack of desire to participate.

These same considerations are relevant to Mofford's claim of good faith. While the Court was spared the difficult task of determining whether the legislation was the product of discriminatory intent, the redistricting maps were enacted despite pleas on the floor, in committee and in the veto message, that the legislation was unconstitutional. The settlement of this case obviated the disposition of some of these assignments of constitutional error. The stipulated findings, approved by this Court, do find that House Bill 2002 failed to achieve numerical equality as constitutionally mandated. The Court's findings and conclusions do recognize the serious constitutional questions raised by the division of the San Carlos Apache reservation. The Court is bound by the findings and conclusions that it approved upon the stipulation of the litigants.

Defendant Mofford has failed to carry her burden in establishing the existence of a special circumstance by virtue of an alleged agreement amongst the parties that no attorney's fees would be paid the plaintiffs by the defendant. The parties have submitted conflicting affidavits to the Court on this subject, none of which are particularly conclusive of the matter. The Court is aware that the parties agreed to put this issue off until the case was settled, and to then leave it to the Court's discretion. With respect to the existence of such an agreement not to pay attorney's fees, the Court finds that defendant Mofford has not been able to meet the burden of proof as to such an agreement.

The defendant has finally asserted the existence of a special circumstance due to the applicants' failure to timely file their request for attorney's fees. The Court's records reflect that plaintiffs and plaintiff-intervenor filed their Motions for Attorney's fees on April 12, 1982, ten days after the Judgment. Intervenor Pappas filed his motion on April 20, 1982. The timeliness argument, in any case, is defeated by the Supreme Court's recent decision in *White v. New Hampshire Department of Security,* —— U.S. ——, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). In reversing the First Circuit, the Court found viable a § 1988 application filed some four and one-half months after the entry of judgment.

The attorney's fees ordinarily recoverable by a prevailing party and mandated by the law, absent special circumstances, will be

awarded to the applicants in this case. The objecting defendant has not established the existence of any special circumstances which would render such awards inequitable. The Court is therefore faced with determining the reasonableness of the fees requested.

The plaintiffs have sought reimbursement for hours spent on their objection, which was filed with the Department of Justice for consideration in conjunction with the Department's preclearance procedure. While the defendant contests the propriety of reimbursing such expenditures, such fees may be compensated where the administrative activities are relevant and helpful to the judicial proceeding. *Thornberry v. Delta Air Lines,* 676 F.2d 1240 (9th Cir. 1982). The plaintiffs' efforts made in conjunction with their presentation to the Department of Justice were inextricably tied to the lawsuit. A great deal of the effort would have had to have been made during pretrial preparation in any case. Accordingly, the plaintiffs' request is reasonable and they will be reimbursed for these hours.

▆ Plaintiffs also seek compensation for costs incurred outside of those taxable in the bill of costs. These costs include telephone bills and photocopying expenditures. The Court is aware only of authority which finds such expenses not compensable under the civil rights statutes. *Skehan v. Board of Trustees of Bloomsburg State,* 436 F.Supp. 657, 667 (M.D. Pa. 1977), *Barrett v. Kalinowski,* 458 F.Supp. 689, 708 (M.D. Pa. 1978). This request will consequently be denied.

In evaluating the reasonableness of the fee applications, the Court has considered the twelve factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1976). If one impression was left by the work of the attorneys in the preparation and trial of this matter, it was articulated in Court by visiting Circuit Court Judge J. Clifford Wallace, a member of the three-judge panel which tried this case. Judge Wallace, a Californian, praised the attorneys for the high calibre of their work

and demeanor. Judge Wallace represented the feelings of Judge Valdemar Cordova and the undersigned in complimenting the attorneys for their performances while faced with an enormous organizational effort, challenging legal issues and imposing time constraints.

This said, the Court has closely examined the time records of the fee applicants. Generally, the Court would agree that hours for which they seek remuneration were well spent and necessary. The Court has excised a portion of these hours for various reasons. (*See* Appendix "A.") Certain of the hours were described in such a cursory manner, that it is impossible for a reviewer to determine whether the time was justified. An insignificant number of hours has been trimmed from the plaintiffs' fee petition, where it appears that this work was performed for Governor Babbitt, not one of the attorneys' clients, but in fact, a nominal adversary.

The Court has also deleted time charged where more than one attorney represented a party at a deposition. Plaintiffs have attempted to justify such expenditure of resources on the ground that this was justified because two different law firms were representing the plaintiffs. While the Court can appreciate the logistical problems such an arrangement might occasion, the Court cannot agree that the public purse should bear an expense incurred primarily for the convenience of counsel.

Similarly, charges for the attendance of associates and paralegals at trial will not be reimbursed. While the involvement of a large staff was necessary for the preparation of the case, the parties should not expect the state to reimburse personnel for merely sitting through the trial.

These attorneys seeking remuneration are asking for hourly fees ranging from $50 per hour to $250 per hour. There was testimony presented regarding the reasonableness of such requests. The Court is well aware of the reputation of the attorneys involved in the case and would concur that these fees are probably deserved, where the attorneys are representing their regular clientele.

Two of the *Kerr* factors militate against granting the higher range of the fees requested. First, *Kerr* teaches that the Court should consider the nature of the attorney-client relationship. In this case, the plaintiffs' chief counsel were John P. Frank and Paul Eckstein. Mr. Frank is the general counsel to the State Democratic Party. Mr. Eckstein has long been associated with Democratic Party politics in Arizona. Both attorneys lobby at the Legislature and, in fact, lobbied on this legislation. For both of these gentlemen, their participation in partisan politics is motivated, at least in part, by interests in civic affairs and the public good. Neither involved their law firms in this litigation with an eye towards pecuniary gain. Yet, having partially succeeded, they have sought compensation at rates which would undoubtedly result in substantial gain for their respective law firms.

The Court believes that compensation at a rate which covers their firms' overhead and salaries is more equitable. Instead of hourly fees of $150 per hour and up, all partners will receive $90 per hour, while associates will receive $60 per hour, and paralegals will be paid $30 per hour. These are reasonable fees in the Metropolitan Phoenix area. They have been awarded by this Court in complex antitrust cases. They should certainly adequately compensate the attorneys, while not dissipating their feelings of civic-mindedness and altruism.

These considerations are equally applicable to the attorneys for the San Carlos Apaches and the Intervenor Pappas. Joe Sparks is the retained counsel for the San Carlos Apaches. As such, his firm represents them on various matters. While he represented them pursuant to a fee arrangement, the Court suspects there was more to his advocacy than a mere fee. John Herrick of the firm of Knollmiller, Herrick and Brown, is the general counsel to the State Republican Party. To suggest that this is simply another client to Mr. Herrick, would not be fair to the man or his beliefs. All of the applicants entered this fracas for noble, civic-minded, albeit political purposes. They all assert that they have prevailed to an extent. Their compensation has not been and need not be simply monetary.

*Kerr* also directs the Court's attention to the amount prayed for in the Complaint and the amount obtained in the Judgment. In this case, such consideration can be translated to what has been gained by the suit.

The litigants in this case contend that they have vindicated the political rights of every citizen of the State. A reading of the Judgment evidences this assertion. The settlement, however, and the legislation which prompted such suit, were the acts of politicians. While the citizens of the State *may* benefit from the new lines on the maps, the more direct beneficiaries are the politicians who will run and be elected to the new districts. This is not to denigrate the effort made or the results obtained. However, the Court cannot and should not ignore the public perception of this litigation. After all, it is the public who will pay for the suit.

For the same reasons, the Court exercises its discretion so as to deny plaintiffs' request for a multiplier.

In conclusion, the Court feels that it is required under the law to award attorney's fees to the applicants. While all of the attorneys involved in the prosecution of this action did a first-rate job, the requests of the applicants will be slashed in recognition that it is the taxpayer who must bear the expense of this litigation. Accordingly, plaintiffs will receive approximately half of what they prayed for. The hours and the rates of the intervenors will also be reduced to a lesser degree. Accordingly,

IT IS ORDERED that the Motions for Attorneys Fees will be granted and the attorneys will be compensated as set forth in Appendix "B", which is incorporated into this Order.

## APPENDIX "A"

### Reductions In Hours

| Attorney | Inadequate Description Of Time | Time Working With Governor | Discovery Time | In-Court Time |
|---|---|---|---|---|
| Cantelme | | 2.8 | 13.6 | 19.5 |
| Eckstein | 7.5 | 2.1 | | |
| Frank | 16.1 | .5 | | |
| Gerlach | | | 10.2 | 1.5 |
| Glascock | 19.0 | | | |
| Harper | 1.0 | | | |
| Herrick | | | | 10.5 |
| Martel | 1.3 | | 50.2 | 7.0 |
| Olson | | 1.0 | | 14.5 |
| Shields | | | | 27.0 |
| Soland | 10.0 | | 15.0 | 8.5 |
| Sparks | | | | 12.0 * |
| **Paralegal** | | | | |
| Hedges | 17.5 | | | 16.0 |
| Munger | | | | 16.0 |
| McElfrish | 2.8 | | | |

* Trial Preparation

| Sparks & Siler | | | |
|---|---|---|---|
| Partner | 389.8 | 90.00 | 35,082.00 |
| Associates | 134.6 | 60.00 | 8,076.00 |
| TOTAL | | | 43,158.00 |

Plaintiffs Total – $120,225.00

All Claimants Total – $190,182.00

## APPENDIX "B"

### TOTAL FEES TO BE PAID

| Attorneys | Hours | Hourly Rate | Fee |
|---|---|---|---|
| **Brown & Bain** | | | |
| Jack E. Brown | 2.5 | 90.00 | 225.00 |
| Paul F. Eckstein | 259.6 | 90.00 | 23,364.00 |
| Jennifer P. Beaver | 10.5 | 60.00 | 630.00 |
| Christopher Lee | 0.3 | 60.00 | 18.00 |
| Ana Maria Martel | 332.4 | 60.00 | 19,944.00 |
| Douglas Gerlach | 219.8 | 60.00 | 13,188.00 |
| Craig W. Soland | 331.9 | 60.00 | 19,914.00 |
| Paralegals | 409.4 | 30.00 | 12,282.00 |
| TOTAL | | | 89,565.00 |
| **Lewis and Roca** | | | |
| John P. Frank | 116.4 | 90.00 | 10,476.00 |
| Marty Harper | 0 | 60.00 | |
| Kevin Olson | 114.3 | 60.00 | 6,858.00 |
| David J. Cantelme | 212.8 | 60.00 | 12,768.00 |
| Paralegals | 18.6 | 30.00 | 558.00 |
| TOTAL | | | 30,660.00 |
| **Knollmiller, Herrick & Brown** | | | |
| John E. Herrick | 279.5 | 90.00 | 25,155.00 |
| John E. Swift, II | 27.4 | 60.00 | 1,644.00 |
| TOTAL | | | 26,799.00 |